UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THERESA M. BREWERTON,

                              Plaintiff

                                                    DECISION AND ORDER

-vs-
                                                    05-CV-6036 CJS

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

_____

APPEARANCES

For the Plaintiff:          Christine M. Valkenburgh, Esq.
                            Cole & Valkenburgh, P.C.
                            7 East Steuben Street, P.O. Box 232
                            Bath, New York 14810

For the Defendant:          Christopher Taffe, Esq.
                            Assistant United States Attorney
                            Western District of New York
                            100 State Street
                            Rochester, New York 14614

INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner"), which denied

plaintiff's application for disability insurance benefits and supplemental security income

("SSI") benefits.  Now before the Court is defendant's motion for judgment on the

1

pleadings [#7] and plaintiff's cross-motion [#8] for an order remanding the case for

further administrative proceedings.  For the reasons stated below, defendant's motion is

denied, plaintiff's motion is granted, and this matter is remanded for further

administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits and SSI benefits on June 12,

2003, claiming to be unable to work due to "[p]re-menstrual [dysthymic] disorder, panic

attacks, major depression, and anxiety." (89)[1]  The Social Security Administration

denied the application on August 27, 2003. (31)  An administrative hearing was held on

May 19, 2004, before an Administrative Law Judge ("ALJ").  The ALJ issued a Decision

and Order on June 22, 2004, finding that plaintiff was not disabled. (16-23)  Plaintiff

sought review from the Appeals Council, which denied her request on November 26,

2004. (4)  Plaintiff commenced the instant action on January 27, 2005.

## FACTUAL BACKGROUND

At the time of the hearing in this matter, plaintiff was 40 years old, and had a

four-year college degree.  Between 1986 and February 2003, plaintiff worked as a sales

clerk, retail store manager, and special education teacher. (90)  When applying for

benefits, plaintiff described her problems as follows:

> I get so tired that I think I'll pass out.  I cannot think.  I get disoriented.  I
> go through crying spells and emotional pain.  I have a hard time doing
> normal tasks like cleaning house, eating, doing laundry and more.  Most
> of the time I have to force myself to get up and do everyday tasks.  I have
> been so depressed that I have contemplated suicide.  I just want to sleep
> all the time.  I have no energy or desire.

---

[1]Unless otherwise indicated, citations are to the Administrative Record.

Plaintiff is also a recovering alcoholic.  Plaintiff further testified that she experienced

panic attacks, which caused her to be "totally paralyzed" for "about an hour to an hour

and a half." (262)  She also stated that she had pain in both knees, which she likened to

"extreme needles and pins". (255)  She alleged that she could only stand for ten

minutes, walk two blocks, and sit for a few minutes without experiencing pain in her

knees. (256-57)  As for her daily activities, plaintiff testified that she took her two

children to school in the morning, and then returned home and went back to bed for

hours, because she felt "exhausted". (258-60)  She stated that when she eventually got

out of bed, she watched television "most of the time". (260)  Plaintiff stated that she

fixed meals for herself and her children and did the laundry "most of the time". (260-61)

Plaintiff indicated that, in addition to taking her children to school, she was able to drive

and to attend AA meetings. (249)

MEDICAL EVIDENCE

The following is a summary of the medical evidence that was before the

Administrative Law Judge.  In 1995, plaintiff was admitted to Corning Hospital for one

week of inpatient treatment for "borderline anorexia and dehydration", as well as

"severe panic attacks".  Between 2001 and 2002, plaintiff was treated at Schuyler

County Mental Health in Watkins Glen, New York, for alcohol abuse.

Between 1985 and 2003, plaintiff was treated by Mala Sutton, M.D. ("Sutton") in

Corning, New York, for depression, anxiety, and panic attacks.  On December 21, 2001,

Sutton examined plaintiff, and noted no complaints of depression or anxiety.  Sutton

merely stated that plaintiff would continue with "ongoing counseling for alcoholism."

(146)  On June 18, 2002, Sutton concluded that plaintiff was experiencing "probable

3

recurrent panic attacks" and "stress reaction to depression", and prescribed Zoloft 50 mg per day. (213)  Sutton noted that plaintiff was receiving counseling and had an appointment to see a psychiatrist.

On July 2, 2002, Mihai Dascalu, M.D. ("Dascalu"), examined plaintiff and diagnosed her as having alcohol dependence and depression.  Dascalu observed that plaintiff appeared depressed, but her thoughts were "logical, sequential, and goal oriented", and her insight and judgment were good. (115) Dascalu noted that plaintiff's depression "improve[d] significantly" after taking Zoloft 50 mg.

On November 14, 2002, Sutton examined plaintiff and noted that "she is currently on Zoloft 75 mg for depression, and is doing fairly well." (142)  On February 26, 2003, plaintiff told Sutton that she experienced chest pains and shortness of breath at work.  Plaintiff also complained of "political" problems at work.  Sutton observed that plaintiff appeared "quite anxious and depressed".  Sutton increased plaintiff's Zoloft to 100 mg and recommended that she be evaluated by a psychiatrist. (135)

In April 2003, plaintiff was admitted to St. Joseph's Hospital in Elmira, New York, for one week of inpatient treatment and observation after she complained of depression and suicidal ideation, following a breakup with her boyfriend. (127)  Joita Nedelcu, M.D. ("Nedelcu"), noted that plaintiff had a Global Assessment of Functioning ("GAF") test score of 25 upon admission, and a score of 55-60 upon discharge. (121) Nedelcu treated plaintiff with Zoloft 200 mg and psychotherapy.  Upon being released from the hospital, plaintiff denied being depressed and denied any suicidal thoughts. (122) Plaintiff was told to continue taking Zoloft and seek further treatment with a psychiatrist.

On April 30, 2003, plaintiff complained to Sutton of feeling "anxious". (133)  On

4

June 10, 2003, plaintiff told Sutton that she was "quite depressed", but denied any suicidal ideation.  Sutton stated that she was uncertain whether or not plaintiff suffered from "major depression", and urged plaintiff to see a psychiatrist. (132) Nonetheless, in June and August 2003, Sutton completed forms indicating that plaintiff was unable to work due to "severe depression/anxiety" and "severe depressive neurosis". (217-19) In October 2003, Sutton completed similar forms, and added that plaintiff was unable to work due to "premenstrual dysphoric disorder". (225-26)

On October 6, 2003, Sutton reported that plaintiff stopped working because she "could not handle the stress" of teaching. (192)  Sutton noted that plaintiff was "moody, quite depressed, [and] anxious", despite continuing to take Zoloft 200 mg.  Sutton further reported that plaintiff had missed two appointments with the psychiatrist, and urged her to re-start treatment. (194)  The same day, Sutton completed a residual functional capacity assessment form for Steuben County Department of Social Services. (223-24) With regard to plaintiff's exertional or functional limitations, Sutton stated that plaintiff was "moderately" limited in her ability to push, pull, and bend, but otherwise had no limitations. (224) As for her non-exertional functioning, Sutton stated that plaintiff was "moderately" limited in her ability to maintain attention and concentration, and was moderately-to-very limited in her ability to function in a work setting at a consistent pace. (Id.)

On December 23, 2003, Sutton reported that plaintiff was "quite tearful" and "depressed".  Sutton recommended that plaintiff seek counseling and re-evaluation by a psychiatrist. (195)

On May 21, 2004, Veena Garyali, M.D. ("Garvali"), a psychiatrist, completed a

report, stating that plaintiff was suffering from "mild" depression. (241)  Garyali

examined plaintiff on just two occasions, March 4, 2003 and March 25, 2003, after

which plaintiff did not return for treatment.[2]

STANDARDS OF LAW

_____42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the

Commissioner of Social security as to any fact, if supported by substantial evidence,

shall be conclusive."  The issue to be determined by this Court is whether the

Commissioner's conclusions "are supported by substantial evidence in the record as a

whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998).  Substantial evidence is defined as "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

The SSA has promulgated administrative regulations for determining when a
claimant meets this definition.  First, the SSA considers whether the claimant is
currently engaged in substantial gainful employment.  If not, then the SSA
considers whether the claimant has a "severe impairment" that significantly limits
the "ability to do basic work activities.  If the claimant does suffer such an
impairment, then the SSA determines whether this impairment is one of those
listed in Appendix 1 of the regulations.  If the claimant's impairment is one of
those listed, the SSA will presume the claimant to be disabled.  If the impairment
is not so listed, then the SSA must determine whether the claimant possesses
the "residual functional capacity" ["RFC"] to perform his or her past relevant work.

_____

[2]Plaintiff submitted Garyali's report both to the ALJ and to the Appeals Council. (7, 24 )

> Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of this five-step sequential analysis, defendant may carry her burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Noting that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.")  However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then defendant cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[3] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[4]

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and

---

[3]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

[4]20 C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

> severity of your impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent with
> the other substantial evidence in your case record, we will give it
> controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other

substantial evidence in the record conflicts with the treating physician's opinion . . .  that

opinion will not be deemed controlling.   And the less consistent that opinion is with the

record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d

Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).

THE ALJ'S DECISION

At the time of the hearing, plaintiff was not receiving any mental health

treatment, other than from Sutton, her family physician, who had prescribed Zoloft.

(255)  Referring to Sutton's office note of October 6, 2003 (231-32), the ALJ asked

plaintiff to explain why she had stopped psychiatric treatment, and plaintiff indicated

that she could not afford treatment, and was unable to get out of bed to go to

appointments. (254-55)

Patricia Vasco, a vocational expert ("VE"), testified at the hearing.  The ALJ

posed the following hypothetical to the VE:

> I want you to consider a female individual . . . 40 years of age. . . .  I want
> you to consider the individual to be limited for the purpose of this
> hypothetical to a light exertional level.  I want you to consider [that] she
> can and does drive on a daily basis for routine errands . . . .  I want you to
> consider that her educational background indicates 12 years of schooling
> plus four years of college.  I want you to consider unskilled occupations. . .
> . .  I want you to consider occupations that would be low in stress, using a
> scale of low, moderate, and high.  I want you to consider occupations that
> would not involve more than a moderate level of concentration, using the
> very same scale.  I want you to consider occupations that would not
> involve more than an occasional use of stairways.  I want you to consider
> occupations that would not be around any significant number of people,

8

would not involve more than occasional contact with individuals.  The claimant in this particular case sets forth that she does occasionally go to school functions. . . . .  In response to that, are there occupations for such a person within the regional or national economy?

(264-65)  The VE responded that there were various jobs in the economy that such a claimant could perform, including mailroom clerk, office helper, and bench assembler. (265-66) The ALJ then asked the VE to consider that the hypothetical claimant was limited to the sedentary exertional level.  The VE testified that there were still jobs that the claimant could perform, including surveillance system monitor, addresser, and table worker. (266) The ALJ then changed the hypothetical again, and asked the VE to consider that the claimant "had panic attacks that last three to four hours, and she has them two to three times per week", that "as a result of depression, she lies down for two to more [sic] hours on each and every day after taking her children to school", and that she had daily "flashbacks" due to abuse.  Not surprisingly, the VE responded that there were no jobs that such a claimant could perform. (267)

In his decision denying benefits, the ALJ found that plaintiff had severe impairments, namely, obesity, anxiety, and depression. (18) As for plaintiff's claim of leg pain, the ALJ stated that "the medical record fails to establish evidence of an inability to ambulate effectively on a sustained basis." (18) The ALJ further found that plaintiff had "mild restrictions in activities of daily living, mild to moderate difficulties with social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation . . . of extended duration." (Id.)  The ALJ found that plaintiff's testimony concerning her limitations was "not entirely credible", and he gave it only "limited weight" in determining her RFC.   The ALJ stated that "[t]he record fails to

9

show that the claimant has required significant ongoing treatment since December 2003

or that a treating physician has assessed her unable to work since that date." (19)  The

ALJ gave little weight to Sutton's October 2003 RFC determination, finding that it was

"not supported by the clinical findings". (19)[5]  Overall, the ALJ determined plaintiff's

RFC as follows:

> [T]he undersigned finds the claimant retains the residual functional
> capacity to lift and carry 10 pounds frequently and 20 pounds
> occasionally, sit for about 6 hours in an 8-hour workday, stand and walk
> for about 6 hours in an 8-hour workday, and push and pull as much as
> she can lift and carry.  In addition, the claimant requires routine repetitive
> tasks of low stress and moderate concentration, can occasionally climb
> stairs and should avoid frequent contact with the public.

(19)  Based upon this RFC finding, the ALJ concluded that plaintiff could not perform

her past relevant work, but that she was "capable of performing a significant range of

light work", and therefore was not disabled. (20)  Specifically, the ALJ found that plaintiff

could perform the following jobs: mail room clerk; office helper; bench assembler;

surveillance system monitor; addresser; and table worker. (22)

## ANALYSIS

Defendant moved for judgment on the pleadings, claiming that the

Commissioner's decision is supported by substantial evidence.  However, plaintiff

cross-moved to remand the case for further administrative proceedings, based upon

new medical evidence.  First, plaintiff submitted reports from her psychiatrist, Faiz

Khan, M.D. ("Khan"), who treated plaintiff in 2004 and 2005, after the administrative

---

[5]The decision appears to contain a typographical error in this regard.  The ALJ wrote that "this opinion is given significant weight," but it is clear that he meant to state that the opinion was *not* given significant weight. (19)

hearing. (Document [#8] pp. 12-14)  Khan completed an assessment of plaintiff's non-exertional impairments, and opined that plaintiff was not capable of working.  Plaintiff also submitted additional evidence concerning surgery that she received subsequent to the hearing to address abnormal menstrual bleeding.  The medical reports suggest that plaintiff's excessively heavy bleeding caused her to feel physically exhausted.  Plaintiff also submitted additional medical evidence concerning exploratory knee surgery which she underwent to address her complaints of knee pain.

The Second Circuit has explained the relevant legal principles are as follows:

42 U.S.C. § 405(g) (1988) provides in pertinent part that "[t]he court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." *Id*. (emphasis added). In *Tirado v. Bowen*, 842 F.2d 595 (2d Cir.1988), we summarized the three-part showing required by this provision as follows: [A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *See Szubak*, 745 F.2d at 833; *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir.1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Lisa v. Secretary of the Department of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)

Plaintiff contends that the proffered records are new and relevant, since they contain new diagnoses, such as post-traumatic stress disorder ("PTSD"), mild degenerative disease of the knees, and "intractable dysfunctional uterine bleeding". She also maintains that there was good cause for her failure to present the evidence at the hearing, since the reports were not generated until after the hearing. *See, Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Because the new evidence submitted by [claimant] did not exist at the time of the ALJ's hearing, there is no question that the evidence is "new" and that "good cause" existed for her failure to submit this evidence to the ALJ."); *but see, Lisa v. Secretary of Dept. of Health & Human Servs*, 940 F.2d at 45 ("[Claimant] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding.  Rather, she must establish good cause for failing to produce and present the evidence at that time."); *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) ("A claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied.  The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim.") (citation omitted).  The Commissioner apparently does not dispute that plaintiff has met the good-cause requirements, since she has not opposed plaintiff's cross-motion.  Accordingly, the Court will grant plaintiff's application for a remand for further administrative proceedings.

CONCLUSION

Defendant's motion for judgment on the pleadings [#7] is denied, and plaintiff's cross-motion [#8] for an order remanding the case for further administrative

proceedings is granted.  This matter is remanded, pursuant to 42 U.S.C. § 405(g),

sentence four, for further administrative proceedings consistent with this Decision and

Order.

      So Ordered.

Dated: Rochester, New York
     April 7, 2006

                    ENTER:


                    /s/ Charles J. Siragusa
                    CHARLES J. SIRAGUSA
                    United States District Judge